UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. **19 - 2 0 4 4 7**

18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)



FILED BY _(M_ D.C.

JUL 2 5 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

CR-UNGARO

MAGISTRATE JUDGE
O'SULLIVAN

UNITED STATES OF AMERICA

vs.

**BENJAMIN FORREST McCONLEY,**
**JASON VAN EMAN, and**
**BENJAMIN RAFAEL,**

Defendants.

_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

#### Relevant Entities and Persons

1.      Weathervane Productions, Inc. ("Weathervane Productions") was a Nevada corporation formed in 2006 with its principal place of business in Bartlesville, Oklahoma.

2.      FCP Holding Co., LLC ("FCP Holding") was a Florida limited liability company formed in 2011 with its principal place of business in Fort Lauderdale, Florida.

3.      Forrest Capital Partners, LLC was a Florida limited liability company formed in 2011 with its principal place of business in Fort Lauderdale, Florida.

4.      Forrest Capital Partners, LLC changed its name to Forrest Capital Partners, Inc. ("Forrest Capital Partners") in March 2012.  Forrest Capital Partners was a Florida corporation with its principal place of business in Fort Lauderdale, Florida.

5.      Forrest Capital and Co., LLC ("Forrest Capital and Co.") was a Florida limited liability company formed in 2013 with its principal place of business in Fort Lauderdale, Florida.

6.      Capital B, LLC ("Capital B") was a Florida limited liability company formed in 2015 with its principal place of business in Miami, Florida.

7.      WVP Holding, LLC ("WVP Holding") was an Oklahoma limited liability company formed in 2015 with its principal place of business in Bartlesville, Oklahoma.

8.      The JV Group, LLC ("JV Group") was an Oklahoma limited liability company formed in 2015 with its principal place of business in Bartlesville, Oklahoma.

9.      Defendant **BENJAMIN FORREST McCONLEY** resided in South Florida, and elsewhere, and was the manager and director of FCP Holding, Forrest Capital Partners, and Forrest Capital and Co.

10.     Defendant **JASON VAN EMAN** resided in Oklahoma and was the President of Weathervane Productions. **VAN EMAN** incorporated WVP Holding and JV Group in Oklahoma.

11.     Defendant **BENJAMIN RAFAEL** resided in South Florida and was employed at Wells Fargo Bank until on or about June 18, 2015. **RAFAEL** was the manager and registered agent of Capital B.

12.     **BENJAMIN FORREST McCONLEY** established personal and corporate accounts in the names of FCP Holding, Forrest Capital Partners, and Forrest Capital and Co. at

2

various banks in Florida, California, and elsewhere, including Wells Fargo Bank, JP Morgan Chase Bank, Regions Bank, UBS Bank, and Citibank.

13.    **JASON VAN EMAN** established personal and corporate accounts in the names of Weathervane Productions, WVP Holding, and JV Group at various banks in Oklahoma and elsewhere, including Wells Fargo Bank, Arvest Bank, and Bank of Oklahoma.

14.    **BENJAMIN RAFAEL** and **BENJAMIN FORREST McCONLEY** established and maintained a corporate account in the name of Capital B at Regions Bank in Florida.

15.    Wells Fargo Bank was a financial institution with a place of business located in Miami-Dade County, Florida, the accounts of which were insured by the Federal Deposit Insurance Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

16.    JP Morgan Chase Bank was a financial institution with a place of business located in Miami-Dade County, Florida, the accounts of which were insured by the Federal Deposit Insurance Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

17.    Regions Bank was a financial institution with a place of business located in Miami-Dade County, Florida, the accounts of which were insured by the Federal Deposit Insurance Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

18.    UBS Bank was a financial institution with a place of business located in Washington, D.C., the accounts of which were insured by the Federal Deposit Insurance

Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

19.     Citibank was a financial institution with a place of business located in Broward County, Florida, the accounts of which were insured by the Federal Deposit Insurance Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

20.     Arvest Bank was a financial institution with a place of business located in Bartlesville, Oklahoma, the accounts of which were insured by the Federal Deposit Insurance Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

21.     Bank of Oklahoma was a financial institution with a place of business located in Bartlesville, Oklahoma, the accounts of which were insured by the Federal Deposit Insurance Corporation, an agency of the United States established to protect depositors by insuring deposits in member banks.

## COUNT 1
## Conspiracy to Commit Wire Fraud
## (18 U.S.C. § 1349)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as if fully set forth herein.

2.     From in or around January 2013, through in or around June 2019, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**BENJAMIN FORREST McCONLEY,**
**JASON VAN EMAN, and**
**BENJAMIN RAFAEL,**

4

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate and agree with each other and with other persons known and unknown to the Grand Jury, to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unjustly enrich themselves by (a) persuading victims, through false and fraudulent pretenses, representations, and promises, to send monies to certain bank accounts controlled by the defendants, and (b) transferring those same monies, without the victims' knowledge or authorization, to other bank accounts controlled by the defendants for their own gain and benefit.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4.      **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** held themselves out as film producers and financiers.

5

5.      **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** falsely and fraudulently offered to provide financing to investors and producers for the production of motion pictures, theater performances, and other projects.

6.      **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** falsely and fraudulently promised that, in exchange for a cash "contribution" from the investors and producers, **McCONLEY** would "match" the contribution and use the combined funds to secure financing for the motion picture, theater performance, or other project.

7.      **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** also entered into false and fraudulent short-term loan agreements with third-party lenders who were willing to provide low-interest "bridge" loans to **McCONLEY** and **VAN EMAN** on behalf of investors and producers.

8.      In order to lure investors, producers, and lenders, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** executed false and fraudulent "funding agreements" or "financing agreements" (hereinafter, "funding agreements"), which guaranteed that the victims' cash contributions or loans would be matched dollar-for-dollar by **McCONLEY**.  **McCONLEY** and **VAN EMAN** further assured the victims that their monies would be held in a secure bank account and would not be transferred without the victims' consent.

9.      The false and fraudulent funding agreements required **BENJAMIN FORREST McCONLEY** to deposit funds into the secure bank account shortly after the victims provided their contribution or loan.  To that end, **JASON VAN EMAN** instructed victims to transfer money to bank accounts at Wells Fargo Bank, JP Morgan Chase Bank, and UBS Bank, which accounts were actually controlled by **McCONLEY** and his co-conspirators.

6

10.     According to the funding agreements, after **BENJAMIN FORREST McCONLEY** deposited his "matching" portion of the money, **McCONLEY** and **JASON VAN EMAN** would apply for a line of credit from the bank using the monies held in the secure bank account as collateral.

11.     **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** typically promised to obtain the line of credit within 30 to 120 days of the victims' contribution or loan. In some instances, the funding agreements required the return of the victims' funds, plus interest, once the line of credit was authorized by the bank. In other instances, the line of credit was to be used to finance the victims' projects, pay production costs, and cover other expenses associated with the project. During the course of the scheme, **McCONLEY** and **VAN EMAN** repeatedly, falsely, and fraudulently assured victims that lines of credit had been applied for and approved by the financial institution associated with the secure bank account.

12.     At times, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** also falsely and fraudulently promised that victims' contributions or loans would be secured by a financial guarantee called a "performance bond." **McCONLEY** and **VAN EMAN** falsely and fraudulently claimed the performance bonds would be issued by a third-party insurance company and paid for by the defendants.

13.     Victims relied on **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN's** false and fraudulent representations and promises concerning the return of their funds and the protections guaranteed by the funding agreements and performance bonds.

14.     Based on these representations and promises, and at **JASON VAN EMAN's** direction, victims sent tens of millions of dollars to accounts controlled by **BENJAMIN**

7

**FORREST McCONLEY** and his co-conspirators at Wells Fargo Bank, JP Morgan Chase Bank, and UBS Bank.

15.     In truth, **BENJAMIN FORREST McCONLEY** never "matched" the victims' contributions or loans as promised in the funding agreements. Neither **McCONLEY** nor **JASON VAN EMAN** applied for lines of credit on behalf of victims. Neither **McCONLEY** nor **VAN EMAN** paid for or otherwise secured performance bonds on behalf of victims.

16.     Instead of fulfilling their promises to victims, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** stole the victims' funds by transferring them from the purportedly secure bank accounts to **McCONLEY** and **VAN EMAN**'s personal and corporate bank accounts, often within days of the victims' contributions or loans.

17.     In order to conceal their theft of victims' monies, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** directed **BENJAMIN RAFAEL**, a Wells Fargo Bank employee, and other co-conspirators, to falsely and fraudulently deceive victims about the security of their funds. During the course of the scheme, **RAFAEL** and other co-conspirators repeatedly told victims that their contributions or loans had been "matched" and that **McCONLEY** and **VAN EMAN** had applied for lines of credit as promised in the funding agreements.

18.     Up to and after his termination from Wells Fargo Bank in June 2015, **BENJAMIN RAFAEL** routinely sent false and fraudulent emails to victims from his Wells Fargo Bank and personal email accounts. Following **RAFAEL**'s termination from Wells Fargo Bank, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** lied to victims by assuring them that **RAFAEL** was still a bank employee. When certain victims attempted to verify

8

RAFAEL's employment at the bank, or contact Wells Fargo Bank directly, **McCONLEY** and **VAN EMAN** warned the victims not to do so.

19. During the course of the scheme, **BENJAMIN FORREST McCONLEY**, **JASON VAN EMAN**, and **BENJAMIN RAFAEL** also created and transmitted, via interstate and foreign wire communications, false and fraudulent bank documents, including purported bank letters, account signature cards, and deposit account balance summaries. Several of these documents were forgeries.

20. When victims demanded the return of their monies, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** usually refused to return the victims' monies as promised in the funding agreements, often blaming "compliance" issues at the financial institution associated with the purportedly secure account. As a result, several victims filed civil lawsuits and other legal actions in Florida, California, and Texas, which lawsuits and legal actions alleged that the defendants and their co-conspirators had stolen the victims' monies.

21. During the pendency of the lawsuits and legal actions, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** continued to lure victims with false and fraudulent promises and documents. In order to resolve the various lawsuits and legal actions filed by earlier victims, and to pay attorneys' fees, **McCONLEY** and **VAN EMAN** directed later victims' funds to the earlier victims and attorneys; all without the later victims' knowledge or authorization.

22. In order to conceal from the public news of the lawsuits and legal actions, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** engaged an "online reputation management" firm to "suppress" or hide negative information about **McCONLEY** and **VAN EMAN**.

9

23.     In addition, in response to demands from earlier victims, **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** sometimes used later victims' funds to make partial repayments of monies they stole from earlier victims; all without the later victims' knowledge or authorization.

24.     Throughout the course of the scheme, **BENJAMIN FORREST McCONLEY**, **JASON VAN EMAN**, and **BENJAMIN RAFAEL** used victim monies to purchase luxury automobiles, personal watercraft, real estate, jewelry, home furnishings, designer clothes, hotel accommodations, and private and commercial air travel.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-25
### Wire Fraud
### (18 U.S.C. § 1343)

1.     The allegations set forth in the General Allegations section of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

2.     From in or around January 2013, through in or around June 2019, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**BENJAMIN FORREST McCONLEY,**
**JASON VAN EMAN, and**
**BENJAMIN RAFAEL,**

did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money or property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing such scheme and artifice, did

10

knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

## PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants and their co-schemers to unjustly enrich themselves by (a) persuading victims, through false and fraudulent pretenses, representations, and promises, to send monies to certain bank accounts controlled by the defendants, and (b) transferring those same monies, without the victims' knowledge or authorization, to other bank accounts controlled by the defendants for their own gain and benefit.

## THE SCHEME AND ARTIFICE

4.      The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as if fully set forth herein as the description of the scheme and artifice.

## USE OF WIRES

5.      On or about the dates specified as to each count below, in the Southern District of Florida, and elsewhere, the defendants, for the purpose of executing, and in furtherance of, the aforesaid scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, as more specifically described below:

11

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 2 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | September 4, 2014 | Email from **JASON VAN EMAN** to **BENJAMIN FORREST McCONLEY**, "P.Z.," in South Florida, and others, in which **VAN EMAN** provided wire instructions directing payment of $270,000 to **McCONLEY**'s Forrest Capital and Co. Wells Fargo Bank account ending in 5631 |
| 3 | **BENJAMIN FORREST McCONLEY** | October 10, 2014 | Email from **BENJAMIN FORREST McCONLEY**, in South Florida, to "P.F.," in which **McCONLEY** stated "We are working through the issues and awaiting the approval of the funds to go to you" |
| 4 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | October 13, 2014 | Email from **JASON VAN EMAN** to **BENJAMIN FORREST McCONLEY**, in South Florida, forwarding an email from "A.B.," in which A.B. stated "[a] lawsuit is prepared and will be filed today by close of business" |
| 5 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | February 1, 2015 | Email from **JASON VAN EMAN** to "N.B.," "C.A.," **BENJAMIN FORREST McCONLEY**, in South Florida, and others, attached to which was a false and fraudulent "Performance Bond Agreement" bearing the name of a fictional company called "CRC Assurance Alliance" |
| 6 | **BENJAMIN FORREST McCONLEY**, **JASON VAN EMAN**, and **BENJAMIN RAFAEL** | April 1, 2015 | Email from **JASON VAN EMAN** to "P.Z.," **BENJAMIN FORREST McCONLEY**, and **BENJAMIN RAFAEL**, in South Florida, in which **VAN EMAN** stated "[i]n regards to our other project accounts, WVP is only showing one account online and it also has a zero balance" |
| 7 | **JASON VAN EMAN** and **BENJAMIN RAFAEL** | April 7, 2015 | Email from **JASON VAN EMAN** to "C.K." and **BENJAMIN RAFAEL**, in South Florida, in which **VAN EMAN** stated "our funds are attached" |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 8 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | April 20, 2015 | Email from **BENJAMIN FORREST McCONLEY**, in South Florida, to **JASON VAN EMAN**, attached to which was a false and fraudulent attorney opinion letter regarding a fictional company called "CRC Assurance Alliance" |
| 9 | **JASON VAN EMAN** and **BENJAMIN RAFAEL** | June 2, 2015 | Email from **JASON VAN EMAN** to **BENJAMIN RAFAEL**, in South Florida, in which **VAN EMAN** directed **RAFAEL** to state "the US $1.25M has been received, Forrest Capital has matched the contribution and the funds are in the master account" |
| 10 | **BENJAMIN RAFAEL** and **JASON VAN EMAN** | June 2, 2015 | Email from **BENJAMIN RAFAEL** in South Florida, to **JASON VAN EMAN** and "T.L.," in which **RAFAEL** stated "the US $1.25M has been received, Forrest Capital has matched the contribution and the funds are in the master account" |
| 11 | **BENJAMIN FORREST McCONLEY, JASON VAN EMAN**, and **BENJAMIN RAFAEL** | June 22, 2015 | Email from **BENJAMIN RAFAEL**, in South Florida, from **RAFAEL**'s personal email account, to **JASON VAN EMAN**, "C.T.," **BENJAMIN FORREST McCONLEY**, and others, in which **RAFAEL** stated "I confirm that the funding has been received prior" |
| 12 | **BENJAMIN FORREST McCONLEY, JASON VAN EMAN**, and **BENJAMIN RAFAEL** | June 22, 2015 | Email from **JASON VAN EMAN** to **BENJAMIN RAFAEL**, in South Florida, to **RAFAEL**'s personal email account, "C.T.," **BENJAMIN FORREST McCONLEY**, and others, in which **VAN EMAN** stated "It was brought to my attention that the email is from your personal vs your office" |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 13 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | June 22, 2015 | Email from **JASON VAN EMAN** to **BENJAMIN FORREST McCONLEY**, in South Florida, to which **VAN EMAN** attached a purported Wells Fargo Bank letter drafted by **VAN EMAN** to be signed by **BENJAMIN RAFAEL** |
| 14 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | June 23, 2015 | Email from **JASON VAN EMAN** to "A.E.," **BENJAMIN FORREST McCONLEY**, in South Florida, and others, in which **VAN EMAN** stated "Wells compliance now requires confirmations, etc. to be in letter form" |
| 15 | **JASON VAN EMAN** and **BENJAMIN RAFAEL** | June 23, 2015 | Email from **BENJAMIN RAFAEL**, in South Florida, from **RAFAEL**'s personal email account, to **JASON VAN EMAN**, to which **RAFAEL** attached a purported Wells Fargo Bank letter stating "[t]his letter is to confirm the matched contribution from Forest Capital has been drawn down and is in the process of clearing for distribution" |
| 16 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | June 25, 2015 | Email from **JASON VAN EMAN** to **BENJAMIN FORREST McCONLEY**, in South Florida, in which **VAN EMAN** advised **McCONLEY** that "K.W." had learned that **BENJAMIN RAFAEL** was no longer employed at Wells Fargo Bank |
| 17 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | June 27, 2015 | Email from **JASON VAN EMAN** to "G.S.," **BENJAMIN FORREST McCONLEY**, in South Florida, and others, in which **VAN EMAN** stated "please see the attached letter from Wells Fargo confirming the current balance of the WVPH (1) account and  updates on the deliver [sic] of the LOC" |
| 18 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | July 28, 2015 | Email from **JASON VAN EMAN** to "K.B.," "R.M.," "P.K.," and **BENJAMIN FORREST McCONLEY**, in South Florida, to which **VAN EMAN** attached a purported Wells Fargo Bank letter drafted by **VAN EMAN** and signed by **BENJAMIN RAFAEL** |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 19 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | August 15, 2015 | Email from **JASON VAN EMAN** to **BENJAMIN FORREST McCONLEY**, in South Florida, and "R.M.," in which **VAN EMAN** referred to **BENJAMIN RAFAEL** as a "fake banker" |
| 20 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | October 1, 2015 | Email from **JASON VAN EMAN** to "G.S.," **BENJAMIN FORREST McCONLEY**, in South Florida, and others, to which **VAN EMAN** attached a purported Wells Fargo Bank letter signed by **BENJAMIN RAFAEL** stating that a nonexistent Wells Fargo Bank account "has a current balance of $30,021,391" |
| 21 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | June 29, 2016 | Email from **BENJAMIN FORREST McCONLEY**, in South Florida, to **JASON VAN EMAN**, "L.S.," and others, in which **McCONLEY** stated "expect confirmation and acknowledgment emails for our new project over the next few hours" |
| 22 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | July 15, 2016 | Email from **BENJAMIN FORREST McCONLEY**, in South Florida, to **JASON VAN EMAN**, in which **McCONLEY** forwarded a purported UBS Bank email containing an image of a false and fraudulent wire transfer confirmation |
| 23 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | November 21, 2017 | Email from **JASON VAN EMAN** to "B.T.," in South Florida, and others, forwarding an email from **BENJAMIN FORREST McCONLEY**, attached to which was a false and fraudulent JP Morgan Chase Bank Deposit Account Balance Summary |
| 24 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | December 8, 2017 | Email from **JASON VAN EMAN** to "B.T.," in South Florida, and **BENJAMIN FORREST McCONLEY**, attached to which were purported "signature cards" for a JP Morgan Chase Bank account |

| COUNT | DEFENDANT(S) | APPROX. DATE | DESCRIPTION OF WIRE COMMUNICATION |
|---|---|---|---|
| 25 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | April 9, 2019 | Email from **BENJAMIN FORREST McCONLEY** to **JASON VAN EMAN**, "J.M.," and "R.W.," in South Florida, in which **McCONLEY** stated "[w]e are in the middle of working through the specifics and are close to being able to ... finalizing [sic] our agreement" |

In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT 26
### Conspiracy to Commit Money Laundering
### (18 U.S.C. § 1956(h))

From in or around January 2013, through in or around June 2019, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**BENJAMIN FORREST McCONLEY,**
**JASON VAN EMAN, and**
**BENJAMIN RAFAEL,**

did willfully, that is, with the intent to further the object of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, to knowingly engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

16

<u>COUNTS 27-40</u>
**Money Laundering**
**(18 U.S.C. § 1957)**

On or about the dates specified below as to each count, in Miami-Dade and Broward

Counties, in the Southern District of Florida, and elsewhere, the defendants,

**BENJAMIN FORREST McCONLEY,**
**JASON VAN EMAN, and**
**BENJAMIN RAFAEL,**

did knowingly engage in and attempt to engage in monetary transactions affecting interstate and

foreign commerce, by, through, and to a financial institution, in criminally derived property of a

value greater than $10,000, such property having been derived from a specified unlawful activity,

and knowing that the property involved in the financial transactions represented the proceeds of

some form of unlawful activity, as more particularly described in each count below:

| COUNT | DEFENDANT(S) | APPROX. DATE OF TRANSACTION | APPROX. AMOUNT | DESCRIPTION OF FINANCIAL TRANSACTION |
|---|---|---|---|---|
| 27 | **BENJAMIN FORREST McCONLEY** | May 5, 2015 | $100,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Wells Fargo Bank account ending in 4639 to American Express |
| 28 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | May 19, 2015 | $300,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to **JASON VAN EMAN**'s JV Group Arvest Bank account ending in 3257 |

| COUNT | DEFENDANT(S) | APPROX. DATE OF TRANSACTION | APPROX. AMOUNT | DESCRIPTION OF FINANCIAL TRANSACTION |
|---|---|---|---|---|
| 29 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | May 21, 2015 | $1,000,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to **JASON VAN EMAN**'s JV Group Arvest Bank account ending in 3257 |
| 30 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | May 28, 2015 | $2,250,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to **JASON VAN EMAN**'s JV Group Arvest Bank account ending in 3257 |
| 31 | **BENJAMIN FORREST McCONLEY** | June 5, 2015 | $100,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Wells Fargo Bank account ending in 4639 to American Express |
| 32 | **BENJAMIN FORREST McCONLEY** | June 12, 2015 | $1,000,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to Euro Motorsport |
| 33 | **BENJAMIN FORREST McCONLEY** and **BENJAMIN RAFAEL** | June 16, 2015 | $250,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to **BENJAMIN FORREST McCONLEY** and **BENJAMIN RAFAEL**'s Capital B, LLC Regions Bank account ending in 7517 |

| COUNT | DEFENDANT(S) | APPROX. DATE OF TRANSACTION | APPROX. AMOUNT | DESCRIPTION OF FINANCIAL TRANSACTION |
|---|---|---|---|---|
| 34 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | June 23, 2015 | $320,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to **JASON VAN EMAN**'s JV Group Arvest Bank account ending in 3257 |
| 35 | **BENJAMIN FORREST McCONLEY** and **JASON VAN EMAN** | July 16, 2015 | $1,500,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 to **JASON VAN EMAN**'s JV Group Arvest Bank account ending in 3257 |
| 36 | **BENJAMIN FORREST McCONLEY** and **BENJAMIN RAFAEL** | July 22, 2015 | $220,000 | Wire transfer from **BENJAMIN FORREST McCONLEY** and **BENJAMIN RAFAEL**'s Capital B, LLC Regions Bank account ending in 7517 to **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Wells Fargo Bank account ending in 5059 |
| 37 | **BENJAMIN FORREST McCONLEY** | August 19, 2015 | $16,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Regions Bank account ending in 7258 to Schnack's Jewelery |
| 38 | **BENJAMIN FORREST McCONLEY** | August 21, 2015 | $21,000 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital Partners Regions Bank account ending in 7258 to Schnack's Jewelery |

| COUNT | DEFENDANT(S) | APPROX. DATE OF TRANSACTION | APPROX. AMOUNT | DESCRIPTION OF FINANCIAL TRANSACTION |
|---|---|---|---|---|
| 39 | **BENJAMIN FORREST McCONLEY, JASON VAN EMAN** and **BENJAMIN RAFAEL** | September 2, 2015 | $80,000 | Wire transfer from **BENJAMIN FORREST McCONLEY AND BENJAMIN RAFAEL**'s Capital B, LLC Regions Bank account ending in 7517 to **JASON VAN EMAN**'s JV Group Arvest Bank account ending in 3257 |
| 40 | **BENJAMIN FORREST McCONLEY** | June 21, 2016 | $2,132,897 | Wire transfer from **BENJAMIN FORREST McCONLEY**'s Forrest Capital and Co. UBS Bank account ending in 1218 to **McCONLEY**'s FCP Master Holding Account LLC JP Morgan Chase Bank account ending in 9729 |

It is further alleged that the specified unlawful activity is wire fraud, in violation of Title 18, United States Code, Section 1343.

In violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE
### (18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1))

1.     The allegations of this Indictment are re-alleged and by this reference are fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which the defendants, **BENJAMIN FORREST McCONLEY, JASON VAN EMAN**, and **BENJAMIN RAFAEL**, have an interest.

2.     Upon conviction of a violation of Title 18, United States Code, Sections 1343 and 1349, as alleged in this Indictment, the defendants shall each forfeit to the United States, pursuant

to Title 18, United States Code, Section 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

3.     Upon conviction of a violation of Title 18, United States Code, Sections 1956(h) and 1957, as alleged in this Indictment, the defendants shall each forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the violation, or any property traceable to such property.

4.     The property subject to forfeiture includes, but is not limited to:

(a)     Real property located at 2907 Woodrich Drive, Tallahassee, Florida;

(b)     Real property located at 1420 Apple Alley Street, Bartlesville, Oklahoma;

(c)     Real property located at 111 SE Fleetwood Place, Bartlesville, Oklahoma; and

(d)     Real property located at 1444 Oakdale Drive, Bartlesville, Oklahoma.

5.     If any of the property described above, as a result of any act or omission of any of the defendants,

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third person;

(c)     has been placed beyond the jurisdiction of the Court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be divided without difficulty,

the United States intends to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property pursuant to Title 21, United States Code, Section 853(p).

21

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 982(a)(1), and the

procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 18,

United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL

FOREPERSON

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

CHRISTOPHER B. BROWNE
ASSISTANT UNITED STATES ATTORNEY

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| v. | |
| BENJAMIN FORREST McCONLEY, ET AL., | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| Defendants.                    / | **Superseding Case Information:** |

**Court Division**: (Select One)

|  ✓ Miami | ___ Key West | | New defendant(s)           Yes ____   No ____ |
|---|---|---|---|
| ___ FTL | ___ WPB    ___ FTP | | Number of new defendants ____ |
| | | | Total number of counts ____ |

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:      (Yes or No)      No
   List language and/or dialect    _____

4. This case will take  20  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                         (Check only one)

   | | | | | | | |
   |---|---|---|---|---|---|---|
   | I | 0 to 5 days | ___ | | Petty | ___ |
   | II | 6 to 10 days | ___ | | Minor | ___ |
   | III | 11 to 20 days | ✓ | | Misdem. | ___ |
   | IV | 21 to 60 days | ___ | | Felony | ✓ |
   | V | 61 days and over | ___ | | | |

6. Has this case previously been filed in this District Court?      (Yes or No)      No
   If yes: Judge _____      Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?      (Yes or No)      No
   If yes: Magistrate Case No. _____
   Related miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No)      No

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?      Yes ____      No  ✓

8. Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?      Yes ____      No  ✓

CHRISTOPHER B. BROWNE
ASSISTANT UNITED STATES ATTORNEY
FL Bar No. 91337

\*Penalty Sheet(s) attached                                      REV 8/13/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: **BENJAMIN FORREST McCONLEY**

**Case No**:

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:     Twenty (20) years' imprisonment

Counts #: 2-6, 8, 11-14, 16-25

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:     Twenty (20) years' imprisonment as to each count

Count #: 26

Conspiracy to Commit Money Laundering Offenses

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:     Ten (10) years' imprisonment

Counts #: 27-40

Money Laundering

Title 18, United States Code, Section 1957

**\* Max. Penalty**:     Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name: <u>JASON VAN EMAN</u>**

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:      Twenty (20) years' imprisonment

Counts #: 2, 4-25

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:      Twenty (20) years' imprisonment as to each count

Count #: 26

Conspiracy to Commit Money Laundering Offenses

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:      Ten (10) years' imprisonment

Counts #: 28, 29, 30, 34, 35, 39

Money Laundering

Title 18, United States Code, Section 1957

**\* Max. Penalty**:      Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: BENJAMIN RAFAEL**

**Case No**: _____

Count #: 1

Conspiracy to Commit Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:    Twenty (20) years' imprisonment

Counts #: 6, 7, 9, 10, 11, 12, 15

Wire Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:    Twenty (20) years' imprisonment as to each count

Count #: 26

Conspiracy to Commit Money Laundering Offenses

Title 18, United States Code, Section 1956(h)

**\* Max. Penalty**:    Ten (10) years' imprisonment

Counts #: 33, 36, 39

Money Laundering

Title 18, United States Code, Section 1957

**\* Max. Penalty**:    Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**