UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 19-20447-CF-SINGHAL**

UNITED STATES OF AMERICA,
    Plaintiff.

vs.

JASON VAN EMAN,
    Defendant.
_____/

**DEFENDANT'S SENTENCING MEMORANDUM,
AND REQUEST FOR DOWNARD VARIANCE**

Defendant, Jason Van Eman, through counsel, respectfully submits this sentencing memorandum motion for downward variance in advance of his sentencing scheduled for July 21, 2022.

**INTRODUCTION**

The United States Probation Officer has stated that the total offense level is **39** with a guideline imprisonment range of **262-327 months (21.83-27.25 years)**. Accepting and respecting the jury's verdict for purposes of sentencing, the defendant respectfully submits that weighed against his entire life history, the circumstances of his alleged conduct in this case, and taking into consideration the punishment imposed as to his codefendants, a sentence of incarceration within that range is much greater than necessary to achieve the sentencing purposes of section 3553(a).

1

## General Background Information

Before the court is Jason Van Eman, who is 44 years of age. He is married with two children. The defendant has a close and supportive family; and is missed greatly by his family-especially his children. The defendant has zero (0) criminal history points. He is a true first-time offender facing a guideline sentence reserved for career offenders, major drug traffickers, and those convicted of the most serious crimes of violence.

Presently, according to the PSI, he faces a recommended sentence of 21.83-27.25 years in federal prison. His sentence computation is driven by the government position that he is responsible for loss amount of $25,000,000.00 but not more than $65,000,000.00. As will be pointed out below, his sentencing range is unreasonable, and the court should grant a downward variance and impose a sentence well below the recommended range.

## Sentencing Factors For Consideration Under 18 U.S.C. §3553

The defense takes the position that a sentence within this PSI recommended range is ***far greater than necessary*** to punish the defendant for his conduct in this case. While this Court must calculate and consult the guideline range, that range does not generate a presumptively reasonable sentence. Indeed, the Eleventh Circuit has held that "a district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." United States v. Hunt, 459 F.3d 1180, 1185 (11th Cir. 2006).

While the advisory "Guidelines should be the starting point and the initial benchmark," they are "not the only consideration." *Gall v. United States*, 552 U.S. 38, 49 (2007).  So while this Court must begin by calculating the applicable advisory Guidelines range, it also has broad discretion to impose a sentence far below that range.  *See id.* at 49-51; *see also generally United States v. Booker*, 543 U.S. 220 (2005).  It may sentence below the advisory Guidelines range either (a) because "the case at hand falls outside 'heartland' to which the [Sentencing] Commission intends individual guidelines to apply, U.S.S.G. §5K2.0," i.e., a downward departure, or (b) because "the Guidelines sentence itself fails properly to reflect the §3553(a) considerations," i.e., a variance.  *Rita v. United States*, 551 U.S. 338, 351 (2007).

After considering the Guidelines, a sentencing court "should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party.  In so doing, he [she] may not presume that the Guidelines range is reasonable.  He [she] must make an individualized assessment based on the factors presented." *Gall*, 552 U.S. at 49-50.  This is based on the "federal judicial tradition" that a court "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Id.* at 52; *see also United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006) ("a district court may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence").

Section 3553(a) provides:

The court shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth in paragraph (2) of this subsection. (emphasis added).

That section requires the district court to consider (1) the nature of the circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide the defendant with needed rehabilitation; (3) the kinds of sentences available; (4) the Guidelines; (5) any policy statements; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(1).

## Defendant's Reasons for Variance

### (1) Loss Calculation and Guidelines Range

As noted, the PSR (and government) conclude that that defendant is accountable for a loss of $25,000,000 but not more than $65,000,000. The loss attributed to the defendant results in a guideline range that is illogical and beyond "just punishment".

The District Court may hold participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of a conspiracy. United States v. Isaacson, 2014 WL 2119820 (C.A.11(Fla.))(May 22, 2014)(citations omitted). "But the limits of sentencing accountability are not coextensive with the scope of criminal liability." United State v. Hunter, 323 F.3d 1314, 1319 (11th Cir.2003). Additionally, the fact that "the defendant knows about the larger operation, and has agreed to perform a particular act, does not amount to acquiescence in the acts of the criminal enterprise as a whole. Id. at 1320.

4

In <u>United States v. Adelson</u>, 441 F. Supp.2d 506 (S.D. NY 2006), the sentencing guidelines as calculated called for a life sentence (level 46), based upon a $50 million but less than $100 Million loss and other enhancements. As summarized by the trial judge, the facts of this case involved a conspiracy regarding accounting fraud hatched by the company's accounting executives and employees who were under pressure from the CEO. Adelson ultimately became aware of the fraud towards is later stages and rather than expose it, he chose to conceal it and to continue in its participation. Id. at 507.

The trial judge noted that what drove the government's calculations in the case, more than any other factor, was the inordinate emphasis the Sentencing Guidelines place in fraud cases on the amount of actual or intended loss. The judge further noted:

> "As many have noted, the Sentencing Guidelines, because of their arithmetic approach and also in an effort to appear "objective", tend to place great weight on putatively measurable quantities, such as the weight of drugs in narcotics cases, or the amount of financial loss in fraud cases, without, without, however, explaining why it is appropriate to accord such weight to such factors."

After considering the § 3553(a) factors, the judge imposed a sentence of 42 months imprisonment, followed by supervised release, and restitution in the amount of $50 million. In concluding the sentencing order, the judge acknowledged the importance of the Sentencing Guidelines where they provide reasonable guidance in fashioning a sentence that is "fair, just, and reasonable". However, where the calculations run "amok" that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in the section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences. Id. at 514.

5

Here, the defendant received $20.9 million from McConley and sent $20.7 million to projects. The projects then sent back to the defendant $2.1 million as business income in the form of executive producer fees and equity profits. All the defendant's income from the project work was reported on his tax returns and he paid taxes on all of this earned income.[1] Although the government continued to argue that this fact was irrelevant at trial, it should be considered by the Court for sentencing. His payments to victim projects, as well as his reporting and paying taxes on this income, negates the theory that he should be held responsible for the full $60 million loss.

There is a great difference between the defendant and McConley. While McConley was stealing and burning through over $60 million of the victim's money, the defendant was doing real work and sending money to the projects as it came to him from McConley- mostly within 24 hours of receipt. The defendant's reported income pale in comparison to the money stolen and used by McConley to fund the only person in the Indictment who lived a lavish lifestyle. While all of Van Eman's money, income and assets were, and are, easily traceable, millions of dollars sent to McConley remain unaccounted for.

### (2) Sentencing Disparities

The defendant's advisory guideline range exposes him to a potential sentence substantially greater than McConley, who without question is the most culpable in this conspiracy. McConley was sentenced to 156 months imprisonment based upon his un-controverted responsibility for victim losses in excess of $60 million.

---

[1] Defense witness and ex-IRS criminal investigator, Andre Noissette, was prepared to testify to that effect but was disallowed by the Court after the government's objection.

Defendant Rafael was sentenced to a total of 30 months imprisonment. He was provided a 4-level reduction for his role in the offense. As he testified at the defendant's trial, and if he is to be believed, he played an integral role in the conspiracy during his time at Wells Fargo and later after he was fired from Wells. He also played the major role in McConley obtaining the Adana investment which make up a substantial portion of the loss in this case. It is interesting to see that the PSR notes that when asked by the probation officer about loans made to McConley Rafael state it was for "money loaned over time … which appeared to be proceeds of the fraud." (PSR at 16). Notably, Rafeal testified at the defendant's trial that he knew of the fraud, intentionally participated in the fraudulent conspiracy, and knew that he was transferring and using for his own personal benefit victim funds. He also admitted to using known victim funds in support of travel, expensive dinners, lifestyle, stock trading (with McConley), and the purchase of real estate with victims money sent to him by McConley. It should also be noted that, while Rafael testified and was sentenced based on his receipt of only $60,000, the government's evidence at the Van Eman trial suggested an amount of $250,000-which generously allotted only that amount in his shared $2 million joint bank account and millions more in their shared brokerage account.

Based upon the actual conduct and revenues received by McConley and Rafael, and the sentences imposed on each, the defendant should receive a variance from the proposed total offense level.

### **(3) Lack of Financial Benefit From Victim's Funds**

The defendant would incorporate his argument in (1) above and would add that the defendant did not benefit financially from the use of the victim's funds. The evidence at trial made clear that McConley and Rafael benefited personally from the use stolen victim's funds. At best, the defendant went on a business trip to France and leased (not purchased) an Audi vehicle. The defendant did not socialize with McConley and Rafael by partaking in expensive meals, hotels, parties, private jet flights, and stock trading, to name a few. He did no outside investing with either one.[2] Additionally, the defendant provided to projects his own money to keep the projects going while having to deal with the continual delays in funding by McConley.

### **(4) Section 3553(a) Factors Support a Variance**

#### **The Nature of The Circumstance of the Offense and the History and Characteristics of the Defendant**

The Court heard evidence regarding the offense. Again, the defendant's financial gain and benefits does not even come close to the financial benefits and use of victims' funds associated with McConley. Additionally, although not admissible at trial, the defendant passed a polygraph examination by a highly qualified ex-FBI examiner on the main issue in this case – that did he not know that McConley was committing fraud and stealing the victim's money while it was occurring. The defendant offered to submit to a government polygraph to confirm his findings from his testing. The defendant would like an opportunity to present at sentencing the results of that test. Although it is inadmissible

---

[2] Actually, Van Eman invested and lost his own money in 2018-making him the last person to be fooled and defrauded by McConley.

at trial, this court can decide what weight, if any, to give to the results for purposes of sentencing.

As for the defendant's history and characteristics, without question his past history is excellent. The defendant has no prior criminal history. He was and is a person of great character and led an exemplary life. He is a good husband, father, and friend to many. As the court will see from the character letters to be filed, the defendant was a well-respected person within his community. As noted in the PSR, the defendant is educated, was accepted to the Air Force Academy and attended from 1997-1998 and continued in ROTC at the University of Oklahoma where he obtained his degree. The defendant has always been employed since graduating from college and continues to enjoy strong support from his family.

### The Need For the Sentence Imposed To Provide Just Punishment, Afford Adequate Deterrence, Protect The Public From Further Crimes

"Just punishment" in this case should not be a sentence of 20 years or more. As the judge in the Adelson case stated, "In the case of financial fraud, however, an important kind of retribution may be achieved through the imposition of financial burdens." Adelson, at 514. Here, the defendant will be responsible joint and several for over 9 million dollars in restitution. As the court referred to in justifying the sentencing variance on Adelson, the imposition of substantial restitution guaranteed that he would be making substantial restitution payments for the rest of his life. The same can be said of defendant Van Eman.

Regarding a prison sentence. As a first time "white collar" offender, a sentence of 20 years or more in cruel and one that is unnecessary to provide justice and deterrence. Section 3553(a) sets forth that the court shall impose a sentence **sufficient, but not**

9

***greater than necessary,*** to comply with the purposes set forth in paragraph (2) of this subsection. Similarly, given the defendant's background and characteristics, the public needs no protection from any further crime of this defendant.

### The Need to Provide Restitution To Any of the Victims of the Offense

A shorter prison sentence will allow the defendant to get back to work. Although the restitution is significant, the defendant's history shows that he is a hard-working individual who will once again find employment and make whatever necessary payments are ordered to the victims in this case.

### CONCLUSION

To impose a sentence "... sufficient but not greater than necessary …" to achieve the objectives designated in 18 USC §3553, a variance is justified. Defendant, Van Eman, respectfully requests that this Court consider all his arguments and sentencing factors in order to impose a sentence that is ***"reasonable", "but not greater than necessary".*** The defendant understands that he was convicted and that the court must impose a sentence. He hopes this Court will fashion a sentence that will allow him to have a life with his children and supportive family as well as a sentence that takes into account the history and characteristics of the defendant independent of his conviction in this case.

The defense will provide its sentencing recommendation based upon its motion for downward variance once the total offense level is established at the sentencing hearing.

Respectfully submitted,
/s/<u>Sidney Z. Fleischman</u>
FLEISCHMAN & FLEISCHMAN, P.A.
Sidney Z. Fleischman
800 E. Broward Blvd., #402
Ft. Lauderdale, Florida 33301
Phone  954-523-7223
Fax    954-523-4840
Fla. Bar No. 0762962
Email: sf@ffjustice.com


/s/ <u>Neil Karadbil</u>
Neil Karadbil, Esq.
Email: nkaradbil@gmail.com
Fla. Bar No.: 219381
Phone: 954-523-7223


## Certificate of Service

I hereby certify that on the 11th day of July, 2022, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record and the U.S. Attorney's Office, Miami, FL.

/s/***Sidney Z. Fleischman***
Sidney Z. Fleischman